UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| BRENDA DRAKE, *individually and on behalf of others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>FIRST KEY HOMES, LLC,<br><br>Defendant. | CASE NO. 1:19-cv-1268<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Brenda Drake ("Plaintiff"), individually and on behalf of others similarly situated, alleges on personal knowledge, investigation of her counsel, and information and belief, as follows:

### INTRODUCTION

1. This case involves violations by First Key Homes, LLC ("First Key") of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*, and the Federal Communications Commission ("FCC") rules promulgated thereunder, 47 C.F.R. § 64.1200.

2. First Key specializes in generating "leads" by placing calls to consumers looking for a rental home, and then referring those consumers for a fee to customers of First Key, who are typically property owners.

3. In an effort to solicit and generate new business and profits, First Key engaged in a calling campaign making unsolicited telephone calls to Plaintiff and others.

4. In violation of the TCPA, Defendant used both an "artificial or prerecorded voice" and an "automatic telephone dialing system," without Plaintiff's and others' "prior express written consent" within the meaning of the TCPA.

5. The TCPA was enacted to protect consumers from unauthorized and repeated calls exactly like those now at issue—autodialed telemarketing calls utilizing prerecorded messages, placed without consent.

6. First Key's violations caused Plaintiff and others to experience actual harm, including the aggravation, nuisance, and invasion of privacy that necessarily accompanies the receipt of unsolicited and harassing telemarketing calls.

7. In response to First Key's unlawful conduct, Plaintiff brings the instant lawsuit and seeks an injunction requiring First Key to cease all unsolicited telemarketing calls, as well as an award of actual and statutory damages to Plaintiff and others, together with costs and reasonable attorneys' fees.

## JURISDICTION AND VENUE

8. This matter in controversy exceeds $5,000,000, as each member of the proposed class of thousands is entitled to up to $1,500.00 in statutory damages for each call at issue placed in violation the TCPA.

9. Accordingly, this Court has jurisdiction pursuant to 28 U.S.C. § 1332(d)(2).

10. Further, Plaintiff alleges a national class, which will result in at least one class member belonging to a different state.

11. Therefore, both elements of diversity jurisdiction under the Class Action Fairness Act of 2005 ("CAFA") are present, and this Court has jurisdiction.

12. This Court also has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

13. This Court has personal jurisdiction over First Key because the conduct at issue in this case occurred, among other locations, in Indiana. Indeed, First Key placed the calls at issue to Plaintiff's cellular telephone in Indiana.

14. Venue is proper because a substantial portion of the events complained of occurred in this District.

## PARTIES

15. Plaintiff is, and at all relevant times was, an individual citizen of the State of Indiana residing in the City of Fishers.

16. First Key is a limited liability company with its principal place of business in Marietta, Georgia.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991 (TCPA), 47 U.S.C. § 227

17. In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

18. Section 227(b)(1)(A)(iii) of the TCPA provides, in pertinent part:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—
>
> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—
>
> \*     \*     \*
>
> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States.

19. Thus, the plain language of section 227(b)(1)(A)(iii) of the TCPA prohibits the use of automatic telephone dialing systems ("ATDS") or artificial or prerecorded messages to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party.

20. According to FCC findings, the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

21. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

22. The TCPA defines an "automatic telephone dialing system" as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." § 227(a)(1)(A)-(B).

23. This statutory language dictates that "the term 'automatic telephone dialing system' means equipment which has the capacity—(1) to store numbers to be called *or* (2) to produce numbers to be called, using a random or sequential number generator—and to dial such numbers automatically (even if the system must be turned on or triggered by a person)." *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1053 (9th Cir. 2018) (emphasis supplied).[1]

24. Courts have also held that, based on the TCPA's statutory language, a predictive dialing system constitutes an ATDS under the TCPA. *See, e.g.*, *Marks*, 904 F.3d at 1051 ("Although Congress focused on regulating the use of equipment that dialed blocks of sequential or randomly generated numbers—a common technology at that time—*language in the statute*

---

[1] In the past, the FCC has held that this definition is satisfied when a dialing system has the capacity to call "a given set of numbers" or when "dialing equipment is paired with . . . a database of numbers." *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14,014, ¶ 133 (2003); *see In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C. Rcd. 559, 566 (F.C.C. 2008) (rejecting argument that a dialing system "meets the definition of autodialer only when it randomly or sequentially generates telephone numbers, not when it dials numbers from customer telephone lists" and reasoning that "the teleservices industry had progressed to the point where dialing lists of numbers was far more cost effective").

*indicates that equipment that made automatic calls from lists of recipients was also covered by the TCPA.*") (emphasis supplied); *accord Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638-39 (7th Cir. 2012).

25. The FCC has also issued a Declaratory Ruling confirming that autodialed calls and calls using an artificial voice or prerecorded message to a wireless number are permitted only if the calls are made with the "prior express consent" of the called party. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C. Rcd. 559, 2008 WL 65485 (2008).

26. The FCC took steps to further protect consumers from unwanted autodialed marketing calls pursuant to the TCPA.

27. Among other things, the FCC issued a Declaratory Ruling requiring that telemarketers obtain "prior express *written* consent" for all autodialed telemarketing calls to wireless numbers. 2012 FCC Ruling, 27 F.C.C. Rcd. at 1831 (emphasis added).

28. The FCC defined prior express written consent in 47 C.F.R. § 64.1200(f)(8) as "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered."

29. Finally, should any question about consent arise, the seller will bear the burden of demonstrating that a clear and conspicuous disclosure was provided and that unambiguous consent was obtained. 2012 FCC Ruling, 27 F.C.C. Rcd. at 1844.

30. Thus, under the TCPA, the burden is on the telemarketer—here, First Key—to obtain, document, and prove prior express written consent.

31. Further, courts have long held that that a "called party" under the TCPA is the recipient of the call, not the party the caller was intending to reach.[2]

## FACTUAL ALLEGATIONS

32. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

33. Between May 2018 and March 2019, Plaintiff received autodialed telemarketing calls, some of which contained prerecorded messages, on her cellular telephone—(XXX) XXX-6386—from Defendant.

34. When Plaintiff did not pick up the phone, First Key left a prerecorded message informing Plaintiff that she should return First Key's call.[3]

35. There was at least one number that appeared in Plaintiff's caller ID for these calls: 844-395-3959.

36. This number is associated with First Key.

37. For example, when this number is called, the call is answered by a prerecorded message that acknowledges the company being called is First Key.

38. In addition, an internet search of the aforementioned number reveals it is associated with First Key.[4]

---

[2] *See, e.g., Osorio v. State Farm Bank F.S.B.*, 746 F.3d 1242, 1251 (11th Cir. 2014); *Soppet*, 679 F.3d at 638-39.
[3] Recording available at: https://www.dropbox.com/sh/kzalm0o5ov0ea6o/AABsqtEUyW_4fgIvSVpyDS5ta?dl=0.
[4] *See* https://www.firstkeyhomes.com/contact-us/.

6

39. First Key is, and at all times mentioned herein was a "person", as defined by 47 U.S.C. § 153(39).

40. In receiving unwanted and unsolicited telemarketing calls on her cellular telephone, Plaintiff suffered concrete harm in the form of lost time spent fielding the unwanted calls and attempting to get First Key to stop the calls, loss of use of her cellular telephone as the calls came in, and the invasion of privacy and intrusion upon her seclusion.

41. On information and belief, telephone contact made by First Key utilized a prerecorded message, as defined by 47 U.S.C. § 227(a)(1).

42. On information and belief, telephone contact made by First Key to Plaintiff on her cellular telephone occurred via a predictive dialer.

43. The indicia that Defendant used a predictive dialer include the long pause and clicking noise before First Key's prerecorded message started playing.

44. Plaintiff's cellular telephone number was, at all relevant times, assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

45. Plaintiff did not provide her "prior express written consent" allowing First Key to place telemarketing calls to Plaintiff's cellular phone utilizing prerecorded messages and an ATDS within the meaning of the TCPA.

46. Indeed, Plaintiff was never a customer of First Key, nor had she ever had any prior dealings with First Key whatsoever before First Key began calling her.

47. The telephone calls made to Plaintiff's cellular phone by First Key were not "for emergency purposes" as described in 47 U.S.C. § 227(b)(1)(A).

48. The telephone calls to Plaintiff's cellular phone made by First Key, which utilized prerecorded messages and an ATDS for non-emergency purposes and in the absence of Plaintiff's prior express written consent, violated the TCPA.

49. Under the TCPA, the burden is on First Key to demonstrate that Plaintiff provided it with prior express written consent within the meaning of the statute.

## CLASS ACTION ALLEGATIONS

50. Plaintiff brings this action on behalf of herself and other persons similarly situated.

51. Plaintiff proposes the following class definition, subject to amendment as appropriate:

> All persons and entities throughout the United States (1) to whom First Key Homes LLC placed one or more calls, (2) for the purpose of advertising its goods or services, (3) directed to a number assigned to a cellular telephone service, (4) by using an automatic telephone dialing system or an artificial or prerecorded voice, (5) absent prior express written consent, (6) within four years preceding the date of this complaint through the date of class certification.

52. Plaintiff represents, and is a member of, the Class.

53. Excluded from the Class are First Key and any entities in which First Key has a controlling interest, First Key's agents and employees, any Judge to whom this action is assigned and any member of such Judge's staff and immediate family.

54. Plaintiff does not know the exact number of members in the Class, but on information and belief, the number of Class members at minimum is in the thousands.

55. Plaintiff and all members of the Class have been harmed by the acts of First Key, including, but not limited to, the invasion of their privacy, annoyance, waste of time, depletion of their cellular phone battery, and the intrusion on their cellular telephone that occupied it from receiving legitimate communications.

56. This class action complaint seeks injunctive relief and money damages.

57. The joinder of all Class members is impracticable due to the size and relatively modest value of each individual claim.

58. The disposition of claims in a class action will provide substantial benefit to the parties and the judicial economy of the Court in avoiding a multiplicity of identical suits.

59. The Class can be identified easily through records maintained by First Key and third parties..

60. There are well defined, nearly identical, questions of law and fact affecting all Class members.

61. The questions of law and fact involving the Class claims predominate over questions which may affect individual Class members.

62. Those common questions of law and fact include, but are not limited to, the following:

    a. Whether non-emergency calls made to Plaintiff and Class members' cellular telephones used an automatic telephone dialing system or an artificial or prerecorded voice;

    b. Whether such calls were made by First Key;

    c. Whether such calls were made for telemarketing purposes;

    d. Whether First Key can meet its burden of showing it obtained prior express consent (i.e., consent that is clearly and unmistakably stated) to make such calls;

    e. Whether First Key's conduct was knowing or willful;

    f. Whether First Key is liable for damages, and the amount of such damages; and

  g.  Whether First Key should be enjoined from engaging in such conduct in the future.

64. As a person who received multiple telephone calls using prerecorded messages and/or an ATDS, without her prior express consent within the meaning of the TCPA and Rules, Plaintiff asserts claims that are typical of each Class member.

65. Plaintiff will fairly and adequately represent and protect the interests of the Class, and has no interests which are irrevocably antagonistic to any member of the Class.

66. Plaintiff has retained counsel experienced in handling class action claims involving violations of federal and state consumer protection statutes, including claims under the TCPA.

67. A class action is the superior method for the fair and efficient adjudication of this controversy.

68. Class wide relief is essential to compel First Key to comply with the TCPA.

69. The interest of Class members in individually controlling the prosecution of separate claims against First Key is small because the statutory damages in an individual action for the violation of the TCPA are small.

70. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated and prerecorded and the Class members did not provide prior express consent, as required under the statute, to authorize such calls to their cellular telephones.

71. First Key has acted on grounds applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class as a whole appropriate.

72. Moreover, on information and belief, Plaintiff alleges that the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

## FIRST CLAIM FOR RELIEF

### Violation of 47 U.S.C. § 227(b)(1)(A)(iii)

73. Plaintiff incorporates by reference the factual allegations contained in paragraphs 1-72 as if fully stated herein.

74. First Key violated 47 U.S.C. § 227(b)(1)(A)(iii) by utilizing an automatic telephone dialing system to place calls to Plaintiff's cellular telephone number without her express consent.

75. First Key separately violated 47 U.S.C. § 227(b)(1)(A)(iii) by utilizing an artificial or prerecorded voice in connection with calls to Plaintiff's cellular telephone number without her express consent.

76. As a result of Defendant's violations of 47 U.S.C. § 227(b)(1)(A)(iii), Plaintiff and the members of the Class are entitled to damages in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF

### Violation of 47 C.F.R. § 64.1200, *et seq.*

77. Plaintiff incorporates by reference the factual allegations contained in paragraphs 1-72 as if fully set forth herein.

78. First Key violated 47 C.F.R. § 64.1200(a)(2) by utilizing at automatic telephone dialing system and an artificial or prerecorded voice to place telemarketing calls to Plaintiff's cellular telephone number without her prior express written consent.

79. As result of First Key's violations of 47 C.F.R. § 64.1200, Plaintiff and the members of the Class are entitled to damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court grant Plaintiff and all Class members the following relief against First Key:

A. Injunctive relief prohibiting such violations of the TCPA by First Key in the future;

B. As a result of First Key's violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for herself and each Class member $500.00 in statutory damages for each and every violation of the TCPA;

C. As a result of First Key's violations of 47 C.F.R. § 64.1200, *et seq*, Plaintiff seeks for herself and each Class member $500.00 in statutory damages for each and every violation of the TCPA;

D. An award of attorneys' fees and costs to counsel for Plaintiff and the Class;

E. An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Class and any Subclass(es) the Court deems appropriate, finding that Plaintiff is a proper representative of the Class and any Subclass(es), and appointing the lawyers and law firms representing Plaintiffs as counsel for the Class and any Subclass(es);

F. Such other relief as the Court deems just and proper.

Dated: March 28, 2019                    Respectfully submitted,
                                         **BRENDA DRAKE**

                                         */s/ Gary M. Klinger*
                                         Gary M. Klinger
                                         **KOZONIS & KLINGER, LTD.**
                                         4849 N. Milwaukee Ave., Ste. 300
                                         Chicago, Illinois 60630
                                         Phone: 312.283.3814
                                         Fax: 773.496.8617
                                         gklinger@kozonislaw.com

                                         **GREENWALD DAVIDSON RADBIL PLLC**
                                         Michael L. Greenwald
                                         7601 N. Federal Highway, Suite A-230
                                         Boca Raton, Florida 33487
                                         Phone: 561.826.5477
                                         Fax: 561.961.5684
                                         mgreenwald@gdrlawfirm.com

                                         **GREENWALD DAVIDSON RADBIL PLLC**
                                         Aaron D. Radbil
                                         401 Congress Avenue, Suite 1540
                                         Austin, Texas 78701
                                         Phone: (512) 803-1578
                                         Fax: (561) 961-5684
                                         aradbil@gdrlawfirm.com

                                         *Attorneys for Plaintiff and*
                                         *the Proposed Class*